IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **4:17CR3049** |
| vs. | |
| ABRAHAM NUNEZ-MEJIA, | **FINDINGS, RECOMMENDATION, AND ORDER** |
| Defendant. | |

Defendant Abraham Nunez-Mejia ("Defendant") has moved to suppress all evidence obtained during a vehicle search conducted on October 1, 2016, as well as all evidence and statements obtained as fruit of the alleged unconstitutional search. Defendant has further moved to suppress statements made during the traffic stop based on alleged violations of his Fifth Amendment rights. For the following reasons, Defendant's motion should be denied.

## STATEMENT OF FACTS

After hearing testimony and reviewing the documentary and video evidence, the undersigned magistrate judge finds the following facts are credible.

At approximately 8:25 a.m. on October 1, 2016, Nebraska State Patrol Trooper Dale Fahnholz ("Trooper Fahnholz") stopped a northbound vehicle for speeding on Highway 10 in Kearney County, Nebraska. Defendant was the sole occupant of the vehicle. As Trooper Fahnholz approached the vehicle, he noted the presence of a long-barreled pellet gun on the front passenger seat. He immediately asked Defendant if he had any other weapons. Defendant responded that there were no other weapons in the vehicle.

1

During the course of the stop, the trooper learned that Defendant did not have a valid operator's license and had been cited for operating a vehicle without a valid license on multiple occasions. Trooper Fahnholz cited Defendant for driving without a valid license and issued a written warning for his speed.

After issuing and explaining the citation and warning, Trooper Fahnholz informed Defendant that the vehicle would be towed from the scene. Defendant was not its title owner, and there were no other licensed drivers present. The trooper indicated that Defendant was free to ride to the tow site in the tow company's vehicle and could retrieve his personal belongings from the car at that time.

Trooper Fahnholz then told Defendant that prior to tow, the trooper needed to take an inventory of the items in the vehicle. He informed Defendant that he was not under arrest but asked Defendant to sit in the back of the police vehicle during the inventory. The trooper told Defendant that this was a precaution to "control [Defendant's] movement" during the search. (Filing No. 22 ¶ 2 at CM/ECF p. 2). Defendant complied with the trooper's request and entered the backseat of the police vehicle. Trooper Fahnholz lowered the police vehicle's rear passenger window to allow air flow, but bars blocked the window's opening. All doors to the police vehicle were closed and locked.

During the inventory search that followed, the trooper located a loaded .22 caliber revolver in a fishing tackle box. Trooper Fahnholz then radioed his dispatcher with the gun's serial number. He also relayed to a supervising officer that he needed no assistance and that Defendant was not under arrest at that time. The trooper then approached his police vehicle on the passenger side and

began speaking to Defendant through the open rear window. Defendant remained locked within the police vehicle.

The trooper asked Defendant about the tackle box and the weapon inside. Defendant indicated that he did not own the tackle box but admitted he owned the pellet gun and some fishing poles in the vehicle. Trooper Fahnholz asked Defendant if he remembered the trooper asking about other weapons. Defendant said he did remember. The trooper asked if Defendant had lied about the presence of weapons other than the pellet gun. Defendant ultimately admitted he knew the gun was in the tackle box.

The trooper then read Defendant his <u>Miranda</u> rights and requested that he sign a waiver form. Defendant signed the English-language form, and the trooper resumed questioning. Defendant again indicated that he had been using the fishing tackle box and knew the gun was inside. He told the trooper the weapon was owned by a friend and provided the trooper with that friend's contact information. The trooper then ceased questioning the Defendant to resume the inventory search of the vehicle prior to tow.

After completing the search, Trooper Fahnholz handcuffed Defendant, informed him that he was under arrest, and transported him to the Kearney County Sheriff's office.

ANALYSIS

**I.    Fourth Amendment**

The inventory search exception to the Fourth Amendment's warrant requirement "encompasses [three] distinct police actions—the decision to impound or tow a vehicle, the decision to search the vehicle, and the manner and scope of the search." United States v. Arrocha, 713 F.3d 1159, 1162 (8th Cir. 2013). Here, Defendant challenges only the constitutionality of the trooper's decision to impound. Defendant argues that the impoundment violated the Fourth Amendment, thus rendering the subsequent search unconstitutional, and the fruit of that search subject to suppression. Defendant concedes that if the vehicle was properly impounded, the police were legally authorized to inventory its contents. (Filing No. 18 at CM/ECF p. 2); see also Colorado v. Bertine, 479 U.S. 367 (1987).

Police officers may tow and then inventory a vehicle so long as the decision is not based on a purely investigatory motive. United States v. Evans, 781 F.3d 433, 436 (8th Cir. 2015) (citing Bertine, 479 U.S. at 375). A proper impoundment and inventory search falls within law enforcement's "administrative or caretaking function" rather than its investigatory powers. United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir.1993) (citing South Dakota v. Opperman, 428 U.S. 364, 369 (1976)). The decision to impound and inventory a vehicle must be "reasonable under the circumstances." Opperman, 428 U.S. at 376. Decisions are deemed reasonable if "conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion." Marshall, 986 F.2d at 1174.

4

A written policy or evidence of an "established routine" can demonstrate that an officer acted properly within standardized procedures. United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) (citing Florida v. Wells, 495 U.S. 1, 4 (1990)). However, the policy or practice cited "may not be a ruse for a general rummaging in order to discover incriminating evidence." United States v. Taylor, 636 F.3d 461, 464 (8th Cir. 2011) (quoting Wells, 495 U.S. at 4).

The Nebraska State Patrol's Traffic Auxiliary Services policy ("the Policy") outlines standardized criteria for officers responding to highway incidents. (Ex. 2). Subsection VIII of the Policy describes the explicit rights and authority of a Nebraska State Trooper to inventory and store a vehicle. The Policy, in relevant part, allows towing or impounding a vehicle when:

> (1) It is an obstruction or a traffic hazard.
>
> (2) When it is abandoned, reported stolen or it is to be held as evidence of a crime committed.
>
> (3) At the scene of an accident where the driver is not in a position to take charge of the vehicle and direct or request proper removal.
>
> (4) The person driving or in control of such vehicle is arrested and taken into custody and the vehicle is not lawfully parked at the subject's residence.
>
> (5) An arrested driver who is not under the influence of alcohol or a controlled substance or is not otherwise impaired may be allowed to provide for lawful and responsible disposition of the vehicle, at the discretion of the officer, and provided, such disposition does not delay the officer in the performance of his/her duties.

(Ex. 2, § VIII(A)). None of the above delineated categories specifically captures the facts in the instant case. Defendant was cited for driving without an operator's license in violation of Nebraska law. At the time Trooper Fahnholz made the decision to tow and inventory the vehicle, Defendant was not under arrest. Thus, the subsection covering arrested drivers is not directly implicated. (Ex. 2, § VIII(A)(4)). The text of the subsections covering obstruction, hazard, and

abandonment neither define those terms nor provide other written guidance as to whether they would apply on these facts.  (Ex. 2, § VIII(A)(1)-(3)).

Impoundment policies, however, allow law enforcement "latitude and exercise of judgment" without the need for "totally mechanical" adherence to a department's guidelines. Petty, 367 F.3d at 1012 (internal citation omitted). As explained by Trooper Fahnholz, the Nebraska State Patrol's standard practice is to tow vehicles under the circumstances presented in Defendant's case. It is not fatal that the practice described by Trooper Fahnholz is not in the written policy. United States v. Betterton, 417 F.3d 826, 830 (8th Cir. 2005) ("the absence of a written policy controlling the decision to impound a vehicle does not automatically render an inventory search unconstitutional"). It is "not feasible for a police department to develop a policy that provides clear-cut guidance in every potential impoundment situation." Petty, 367 F.3d at 1012. Testimony of an officer can be sufficient to establish a standard law enforcement practice. United States v. Lowe, 9 F.3d 43, 46 (8th Cir. 1993). However, a policy testified to but not included in a written department policy may not contradict any written text. United States v. Rowland, 341 F.3d 774, 780 (8th Cir. 2003) (finding that oral policy to inventory only "particularly valuable" items in a vehicle contradicted the written mandate to record "all" items). Here, the policy described in Trooper Fahnholz' testimony supplements but does not alter any of the written subsections and evidences a separate "established routine" of the Nebraska State Patrol. Petty, 367 F.3d at 1012.

Regardless, "even if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." Taylor, 636 F.3d at 464 (citing United States v. Hall, 497 F.3d 846, 852 (8th Cir. 2007)). Defendant argues that Trooper Fahnholz had an investigatory

motive, rendering the search illegal irrespective of whether it complied with a standard practice.

In order to prove an investigatory motive, there must be "something else" present to prove that the officer involved was motivated by criminal investigation rather than by community caretaking or public safety. United States v. Harris, 795 F.3d 820 (8th Cir. 2015); Taylor, 636 F.3d 461. That "something else" must indicate to the court that law enforcement "raised the inventory-search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." United States v. Smith, 715 F.3d 1110 (8th Cir. 2013) (internal quotation omitted). An investigatory motive does not render an inventory search invalid unless that motive is the officers' sole motivation in carrying out the search. Marshall, 986 F.2d at 1176 (emphasis added).

Trooper Fahnholz stopped Defendant for speeding and determined that he did not have a valid operator's license. Defendant was issued a warning for his speed and a citation for operating a vehicle without a license. The trooper did not press when Defendant informed him that no weapons were present in the vehicle. The trooper likewise did not question Defendant about other criminal activity and repeatedly told Defendant that he was not under arrest prior to finding the revolver. In addition, the incident occurred in a rural area and Defendant was not the title owner of the vehicle. There were no other individuals at the scene to whom the vehicle could be released.

Based on the facts presented, the trooper's behavior was not motivated by an intent to investigate. Rather, the rural location of the stop and Defendant's non-ownership of the vehicle support a community caretaking motive to

7

safeguard the property of the absent vehicle owner. See, e.g., Rowland, 341 F.3d at 779; United States v. Beal, 430 F.3d 950, 954 (8th Cir. 2005).

Finally, Defendant argues that it was improper for the trooper to tow the vehicle rather than allow Defendant to arrange for someone else to remove it from the rural roadway. "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." Arrocha, 713 F.3d at 1164. While the trooper could have, in his discretion, allowed Defendant to arrange for personal disposition of the vehicle, nothing in the Fourth Amendment required him to do so. Bertine, 479 U.S. at 374 (finding discretionary police action can still be reasonable "even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure").

Based on a totality of the circumstances, Trooper Fahnholz acted reasonably in requesting impoundment of the vehicle. Because the vehicle was validly impounded, the resulting inventory search was lawful as well.

## II.    Fifth Amendment

Defendant alternatively argues that his Fifth Amendment right against self-incrimination was violated by Trooper Fahnholz's pre-Miranda questioning. Defendant further argues that his subsequent written waiver of Miranda was involuntary, also in violation of the Fifth Amendment.

 Miranda warnings are required before an individual may be subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in

8

custodial surroundings." Id. at 444. Whether Defendant was in custody when he was speaking with Trooper Fahnholz turns on "whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." United States v. Laurita, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting United States v. Vinton, 631 F.3d 476, 481 (8th Cir.2011)).

When analyzing whether a suspect is in custody, the Eighth Circuit has adopted a six factor approach. Factors include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

Laurita, 821 F.3d at 1024 (quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir.1990)). The first three factors, if present, cut against a finding that a police encounter was custodial, while the remaining three cut in favor of finding a custodial encounter. United States v. Giboney, 863 F.3d 1022, 1027 (8th Cir. 2017).

Informing an individual that he or she is not under arrest or that he or she is free to end an interview is the "most obvious and effective means" of demonstrating that he or she is not custody. Griffin, 922 F.2d at 1349; see also United States v. Perrin, 659 F.3d 718, 721 (8th Cir. 2011) (stating that the Eighth Circuit has never found custody when a suspect was told he was not under arrest

and was free to leave). Prior to finding the revolver, Trooper Fahnholz explicitly told Defendant that he was not under arrest. The trooper further explained that Defendant was free to leave with the tow vehicle. Even after discovery of the revolver, Trooper Fahnholz radioed dispatch and reiterated that Defendant was not under arrest at that time. Trooper Fahnholz also credibly testified he had not made the determination to arrest Defendant when he initiated questioning. These facts "weigh[ ] heavily against" against a finding that Defendant was in custody. Giboney, 863 F.3d at 1027.

Defendant did not, however, have completely "unrestrained freedom of movement." Laurita, 821 F.3d at 1024. Throughout the questioning, Defendant was locked inside Trooper Fahnholz' police vehicle. Yet, Defendant was not handcuffed and was informed prior to entering the vehicle that his detention was temporary, indicating  his restraint was not "comparable to those associated with a formal arrest." United States v. Coleman, 700 F.3d 329, 336 (8th Cir. 2012) (quoting Berkemer v. McCarty, 468 U.S. 420, 441 (1984)). Defendant was also allowed to retain and use his cellphone while seated within the police vehicle, which further supports a finding that Defendant was not in custody. See United States v. Holleman, 743 F.3d 1152, 1160 (8th Cir. 2014) (reasoning that freedom to use cellphone cut against a finding of custody).

Trooper Fahnholz did initiate contact with Defendant, but he did not use police domination, strong arm tactics or other deceptive police practices when communicating with Defendant. United States v. Sanchez, 676 F.3d 627, 631 (8th Cir. 2012) (stating that "assertions that [Defendant] was lying were not coercive interview methods"); see also United States v. Axsom, 289 F.3d 496, 502 (8th Cir. 2002) (finding no strong arm tactics where police "did not adopt a threatening posture…display their weapons, or make a physical show of force

10

during the questioning"). Defendant was placed under arrest at the conclusion of the interview, which is a "very important factor" cutting toward a finding of custody. United States v. Galceran, 301 F.3d 927, 931 (8th Cir. 2002) (quoting United States v. Sutera, 933 F.2d 641, 647 (8th Cir.1991)). However, "no one factor is necessarily dispositive." Id. (citing Griffin, 922 F.2d at 1349). The factors cited in Griffin are not exclusive, [and] custody 'cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly.'" United States v. Elzahabi, 557 F.3d 879, 883 (8th Cir. 2009) (quoting United States v. Czichray, 378 F.3d 822, 827–28 (8th Cir.2004)).

Based on the foregoing, the undersigned finds that, on balance, and based on a totality of the circumstances, Defendant was not in custody during Trooper Fahnholz initial, pre-Miranda questioning. Because Defendant was not in custody when questioned, he was not entitled to Miranda warnings and there is no resulting Fifth Amendment violation. Miranda, 384 U.S. at 467.

Finally, Defendant argues that his subsequent written waiver of Miranda was involuntary. To be admissible under the Fifth Amendment, a statement of the defendant must be "voluntary, knowing, and intelligent." Vinton, 631 F.3d at 483. The waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id. (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). Moreover, Defendant must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. The court evaluates the "totality of the circumstances and must determine whether the individual's will was overborne." United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008) (internal quotation omitted).

11

Trooper Fahnholz testified that he read Defendant the Miranda waiver form aloud, and thereafter asked if Defendant was willing to sign it. The trooper read the form in English, while Spanish is Defendant's primary language. But if a Defendant appears to understand an officer's statements, a language difference does not mandate finding a Miranda waiver was involuntary or unknowing. See, e.g., United States v. Marquez, 605 F.3d 604, 609 (8th Cir. 2010) (finding that English waiver of Miranda was proper when the Spanish language suspect responded effectively in English to officer's questions prior to Miranda warning).

Defendant was still seated in the locked police vehicle at the time he signed the Miranda waiver, and the trooper explained his rights through the open window. While this environment may be somewhat coercive, considering the facts in their totality, Defendant's will was not overborne, and his Miranda waiver was likewise voluntary.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 17) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on November 13, 2017 or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

Dated this 19th day of October, 2017.

BY THE COURT:
_s/ Cheryl R. Zwart_
United States Magistrate Judge